IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CITY OF PRESCOTT, ARKANSAS, et al.                                              PLAINTIFFS

v.                              Case No. 4:19-cv-4036

SOUTHWESTERN ELECTRIC POWER COMPANY                              DEFENDANT

## ORDER

Before the Court is Defendant's Motion to Dismiss. (ECF No. 12). Plaintiffs have filed a response. (ECF No. 21). Defendant has filed a reply. (ECF No. 25). The Court finds this matter ripe for consideration.

## BACKGROUND

Plaintiff the City of Prescott, Arkansas ("Prescott") operates the Prescott Water and Light Company, which provides electric utility service to approximately 1,435 residential customers, 335 commercial customers, and 6 industrial customers. Prescott does not generate its own electric power, meaning it must purchase wholesale capacity and energy from the electric grid maintained throughout the United States.

Prescott relies upon third-party agents to purchase and manage the load and capacity directly from the market to meet the needs of its customers. Historically, Prescott relied upon its agreements with Entergy Arkansas, Inc. ("Entergy"), formerly Arkansas Power & Light, Inc., to serve as its wholesale power supplier. Entergy has and continues to own and maintain an electric supply substation in Prescott. In January 2006, Entergy terminated the contract under which it supplied wholesale power to Prescott. Prescott then purchased electric power from the Arkansas Electric Cooperative Corporation on a temporary basis until January 2009.

Defendant Southwestern Electric Power Company is a wholly owned subsidiary of American Electric Power Company, Inc. Defendant owns and operates facilities for the generation, transmission, and distribution of electric capacity and energy in the states of Arkansas, Louisiana, and Texas, and serves approximately 530,000 retail customers.

On June 30, 2008, Prescott entered into a Power Supply Agreement with Defendant, under which Defendant became Prescott's exclusive wholesale electric provider through 2038. On December 10, 2008, Prescott and Defendant entered into a Network Integration Transmission Service Agreement ("the NITS Agreement") setting out the terms for Prescott to receive Defendant's wholesale power transmitted through the Southern Power Pool ("SPP")[1] system at the Entergy-owned substation. On October 15, 2010, Prescott and Defendant entered into a Revised and Restated Power Supply Agreement (the "PSA"), which did not materially change Defendant's obligations or duties. All of these contracts were approved by the Federal Energy Regulatory Commission ("FERC"), which has exclusive authority to regulate the wholesale power market.

Prescott lays within the geographic footprint of several Regional Transmission Organizations ("RTO"), which are FERC approved entities that coordinate, control, and monitor multi-state electric grids. Defendant is within the RTO SPP's footprint and is a member entity of SPP. SPP directs and oversees the flow of electric capacity over the transmission lines of the member entities (such as Defendant) within the territory granted to SPP by FERC. In exchange for these services, SPP collects charges from Prescott for the transmission of electric capacity over and across the transmission system operated by SPP, which includes the transmission system owned by Defendant.

---

[1] Southern Power Pool is a Regional Transmission Organization, which is defined below.

Entergy was not a member of an RTO when Prescott and Defendant entered into the PSA or the NITS Agreement. However, on December 19, 2013, Entergy became a member of the RTO known as MISO. MISO manages the delivery of electricity throughout fifteen (15) states in the Midwest, and portions of Arkansas are within MISO's service area.

After Entergy joined MISO, Prescott began incurring increased transmission charges. Because Defendant (a member of SPP) relies on Entergy's (now a MISO member's) substation and transmission lines to supply Prescott with power, Prescott had to pay transmission charges to both MISO and Entergy whereas before Prescott paid transmission fees to Entergy alone. Having to pay transmission charges from multiple entities at the same time is known as rate "pancaking." Entergy joining MISO also led to Prescott experiencing "congestion" charges—increased rates during times of peak electricity demand.

On April 5, 2019, Plaintiffs brought the instant action, alleging claims of detrimental reliance, breach of fiduciary duty, and negligence.[2] Specifically, Plaintiffs allege that Defendant made oral promises to reduce Prescott's pancaking and congestions costs, including promises to build new transmission lines and a substation to serve Prescott. Plaintiffs further allege that Prescott forewent certain administrative and other remedies in reliance on Defendant's assurances. Also, on April 5, 2019, Prescott filed a complaint against Defendant with FERC, alleging, *inter alia*, that certain provisions of the PSA are unjust and unreasonable.

On May 28, 2019, Defendant filed the instant Motion to Dismiss, arguing that Plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant also argues that Plaintiffs' state-law claims are subject to federal preemption and that the Court should

---

[2] Prescott School District No. 14, Tommy Poole, Bank of Delight, and Firestone Building Products Company, LLC, (collectively "the Customer Plaintiffs") have asserted claims against Defendant "solely in [their] capacity as [] customer[s] of Prescott Water and Light Company." (ECF No. 1, p. 1).

relinquish primary jurisdiction in this matter to FERC. Plaintiffs oppose the motion. On September 19, 2019, FERC issued its ruling on Prescott's complaint, finding in part that the PSA did not impart any broad agency or fiduciary duty onto Defendant.[3]

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a pleading must provide "a short and plain statement of the claim that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Court must accept as true all factual allegations set forth in the complaint, drawing all reasonable inferences in the plaintiff's favor. *See Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that

---

[3] Defendant has filed a Request for Judicial Notice in Support of Its Motion to Dismiss the Complaint with Prejudice. (ECF No. 14). The document was docketed as a motion and the Court construes it as such. In its motion, Defendant moves the Court to take judicial notice of several FERC and Arkansas Public Service Commission proceedings. The Court will consider such extrinsic evidence as it is allowed to under Federal Rule of Civil Procedure 12(b)(6) and that it finds insightful in ruling on the instant Motion to Dismiss. *See Stahl v. U.S. Dept. of Agri.*, 327 F.3d 697, 701 (8th Cir. 2003) (stating "[t]he court has complete discretion to determine whether or not to accept any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion"). Therefore, the Court finds that the Request for Judicial Notice in Support of Its Motion to Dismiss the Complaint with Prejudice (ECF No. 14) should be and hereby is **DENIED**.

requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. In considering a motion to dismiss under Rule 12(b)(6), "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

"A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (internal citations and alterations omitted) (quoting *Twombly*, 550 U.S. at 555, 557). In other words, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. (quoting Fed. R. Civ. P. 8(a)(2)).

## DISCUSSION

Defendant argues that Plaintiffs' case should be dismissed because they have failed to allege facts sufficient to state claims for detrimental reliance, breach of fiduciary duty, and negligence and because these claims are time-barred. Defendant alternatively argues that Plaintiffs' state-law claims are preempted by FERC's authority to regulate the wholesale power market under the Federal Power Act, 16 U.S.C. § 824 et seq. (the "FPA") and that the Court should yield primary jurisdiction in this matter to FERC. The Court will first address Defendant's jurisdictional arguments. Then, if necessary, the Court will proceed to Defendant's pleading and timeliness arguments.

### I. Jurisdiction

Defendant argues that Plaintiffs' state-law claims are preempted by FERC's grant of authority under the FPA. Defendant also argues that the Court should yield primary jurisdiction to FERC. The Court will separately address these arguments.

### A. Preemption

The Court first addresses Defendant's argument that Plaintiffs' state-law claims are preempted by FERC's authority under the FPA.

Federal preemption doctrine derives from the Constitution's Supremacy Clause, which states that laws of the United States made pursuant to the Constitution are the "supreme Law of the Land." U.S. Const. Art. VI, cl. 2. "[S]tate laws that interfere with, or are contrary to the laws of congress, made in pursuance of the constitution are invalid," or preempted. *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 604 (1991). "Whether a particular federal statute preempts state law depends upon congressional purpose." *In re Aurora Dairy Corp. Organic Milk Mktg. & Sales Practices Litig.*, 621 F.3d 781, 791 (8th Cir. 2010). In analyzing the issue of preemption, the Supreme Court is highly deferential to state law in areas traditionally regulated by the states. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654-55 (1995).

The Eighth Circuit has stated that "there are three primary ways that federal law may preempt state law." *N. Natural Gas Co. v. Iowa Utils. Bd.*, 377 F.3d 817, 821 (8th Cir. 2004). First, federal law may preempt state law where Congress has expressly stated that it intends to prohibit state regulation in a particular area. *Id.* (citing *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)). Second, federal law may preempt state law where Congress has implicitly preempted state regulation by the "occupation of a field." *Id.* A field is occupied when the federal

regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Id.* (citing *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Finally, even if Congress has not completely precluded the ability of states to regulate in a field, state regulations are preempted if they conflict with federal law. *Id.* (citing *Silkwood v. KerrMcGee Corp.*, 464 U.S. 238, 248 (1984)). Such a conflict exists "when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Id.* To determine Congressional intent, courts "may consider the statute itself and any regulations enacted pursuant to the statute's authority." *Aurora Dairy*, 621 F.3d at 792.

"The FPA grants FERC the exclusive authority to regulate rates, terms, and conditions governing interstate transmission of energy and sale of wholesale energy in interstate commerce." *Bd. of Pub. Works, City of Blue Earth, Minn. v. Wis. Power & Light Co.*, 613 F. Supp. 2d 1122, 1126 (D. Minn. 2009). Defendant argues that Plaintiffs' claims are preempted by this express grant of authority because adjudicating these claims will require the Court to retroactively rewrite Defendant's duties under the existing, FERC-approved PSA and NITS Agreement. However, Plaintiffs contend that adjudication of their claims will not intrude on FERC's express authority to regulate the wholesale electricity market.

Upon consideration, the Court agrees with Plaintiffs. The instant state-law tort and implied contract claims in no way implicate FERC's "exclusive authority to regulate rates, terms, and conditions governing interstate transmission of energy and sale of wholesale energy in interstate commerce." *Id.* Plaintiffs are not challenging a decision of FERC or the implementation of a FERC-approved rate. Rather, Plaintiffs are asking the Court to rule on whether Defendant should be held liable for economic harm allegedly incurred as a result of Defendant's acts and omissions

during the course of business negotiations. Therefore, the Court finds that Plaintiffs' state-law claims are not preempted.

### B. Primary Jurisdiction

The Court next addresses Defendant's primary jurisdiction argument.

The doctrine of primary jurisdiction applies to claims "properly cognizable in court that contain some issue within the special competence of an administrative agency." *Chlorine Inst., Inc. v. Soo Line R.R.*, 792 F.3d 903, 909 (8th Cir. 2015) (quoting *Reiter v. Cooper*, 507 U.S. 258, 268 (1993)). "Under the doctrine of primary jurisdiction, a court may leave an issue for agency determination when it involves the special expertise of the agency and would impact the uniformity of the regulated field." *Id.* (citation omitted). "No fixed formula exists for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id*. (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 64 (1956)).

Defendant argues that Plaintiff has brought overlapping claims between this Court and FERC's jurisdiction, raising issues at the heart of FERC's expertise, and thus, the Court should cede primary jurisdiction to FERC. Plaintiffs respond, arguing that the claims in this case do not necessitate FERC's involvement. Specifically, Plaintiffs argue the remedy sought in this case is retrospective, money damages, whereas the relief sought in the FERC proceeding is prospective and administrative in nature.

The Court agrees with Plaintiffs. The issues presented in this case sound in implied contract and tort and seek to remedy past harm caused by Defendant's alleged acts and omissions. They do not concern regulations, licensing, reliability, inspection, or other matters which may fall under FERC's purview, will not alter the substance of the FERC-approved agreements between

the parties, and there is no evidence that FERC would be a superior factfinder in this matter. Therefore, the Court declines to yield primary jurisdiction to FERC.

### C. Conclusion

In sum, the Court finds that Plaintiffs' state-law claims are not subject to federal preemption and declines to relinquish primary jurisdiction in this matter. As such, the Court will proceed to Defendant's pleading and timeliness arguments.

## II. Failure to State a Claim

Defendant argues that Plaintiffs' detrimental reliance, breach of fiduciary duty, and negligence claims fail under Rule 12(b)(6). Defendant also argues that the Customer Plaintiffs' claims fail because Plaintiffs allege no facts regarding them. Finally, Defendant argues that Plaintiffs' claims are time-barred. The Court will address each of these arguments in turn.

### A. Detrimental Reliance

The Court now addresses Plaintiffs' detrimental reliance claim.[4]

"Promissory estoppel is a basis for recovery when formal contractual elements do not exist." *Superior Fed. Bank v. Mackey*, 84 Ark. App. 1, 27, 129 S.W.3d 324, 341 (2003). "To prove promissory estoppel, a plaintiff must show that the defendant made a promise; that the defendant should have reasonably expected the plaintiff to act or refrain from acting in reliance on the promise; that the plaintiff acted or refrained from acting in reasonable reliance on the promise to its detriment; and that injustice can be avoided only by enforcement of the promise." *FutureFuel Chem. Co. v. Lonza, Inc*, 756 F.3d 641, 647 (8th Cir. 2014) (quoting *Fairpark, LLC v. Healthcare Essentials, Inc.*, 2011 Ark. App. 146, 152, 381 S.W.3d 852, 859 (2011)).

---

[4] Arkansas law treats a claim for "detrimental reliance" as a claim for promissory estoppel. *See, e.g.*, *Westside Galvanizing Servs., Inc. v. Ga-Pac. Corp.*, 921 F.2d 735, 738-39 (8th Cir. 1990). Accordingly, the Court uses the terms "detrimental reliance" and "promissory estoppel" interchangeably.

Under Arkansas law, promissory estoppel is applicable only in the absence of an otherwise enforceable contract. *Heating & Air Specialists, Inc. v. Jones*, 180 F.3d 923, 934 (8th Cir. 1999). This "contract bar" requires that courts "never accommodate[ ] a party with an implied contract when [the party] has made a specific one on the same subject matter." *In re Pilgrim's Pride Corp.*, 706 F.3d 636, 640 (5th Cir. 2013) (quoting *Lowell Perkins Agency, Inc. v. Jacobs,* 250 Ark. 952, 959, 469 S.W.2d 89, 93 (1971)). "As a result, a party alleging promissory estoppel can succeed only by showing that the written contract does not cover the subject matter underlying the promissory estoppel claim." *Id.* (citing *Glenn Mech., Inc. v. S. Ark. Reg'l Health Ctr., Inc.*, 101 Ark. App. 440, 444-45, 278 S.W.3d 583, 586-87 (2008)).

Defendant argues that Plaintiffs detrimental reliance claim is barred by the PSA and inadequately pleaded. Plaintiffs contend that their detrimental reliance claim is adequately pleaded and stems from subsequent, separately enforceable agreements outside the scope of either the PSA or the NITS Agreement.

Upon review, the Court finds that Plaintiffs' detrimental reliance claim is contract-barred. The PSA provides that it "constitutes the entire agreement among the Parties," and that "[n]o modification . . . will be binding on any Party unless it is in writing." The Contract further states that Prescott is responsible for "all NITS, related SPP and Entergy charges, and any other charges for the use of third-party transmission systems." The PSA sets out that Prescott is responsible for any charges related to the use of third-party transmission systems such as the pancaking and congestion charges which form the basis of Plaintiffs' complaint. Consequently, the Court finds that the PSA addresses the same subject matter as Plaintiffs' detrimental reliance claim.

Accordingly, the Court finds that Plaintiffs detrimental reliance claim should be dismissed.[5]

### B. Breach of Fiduciary Duty

The Court next addresses Plaintiffs' claim for breach of fiduciary duty.

"Breach of fiduciary duty involves betrayal of a trust and benefit by [a] dominant party at the expense of one under his influence." *LasikPlus Murphy, M.D., P.A. v. LCA-Vision, Inc.*, 776 F. Supp. 2d 886, 905 (E.D. Ark. 2011) (citing *Cole v. Laws*, 349 Ark. 177, 185, 76 S.W.3d 878, 883 (2002)). However, before there can be a breach of a fiduciary duty, a fiduciary relationship must exist. *W. Memphis Adolescent Residential, LLC v. Compton*, 2010 Ark. App. 450, 8, 374 S.W.3d 922, 927 (2010).

"A fiduciary relationship exists between two persons, one of whom has a duty to act for the benefit of another and owes the other duties of good faith, trust, confidence, and candor." 1 Howard W. Brill & Christian H. Brill, *Ark. Law of Damages* § 15:3 (6th ed. 2015). Whether a fiduciary relationship exists is a question of law. *Long v. Lampton*, 324 Ark. 511, 520, 922 S.W.2d 692, 698 (1996). "The party claiming the existence of a fiduciary or confidential relationship has the burden of establishing the facts supporting such a relationship." Brill & Brill, *supra*, § 15:3. Certain relationships give rise to a fiduciary duty as a matter of law, such as attorney-client relationships and trustee-beneficiary relationships. *See Cole*, 349 Ark. at 186, 76 S.W.3d at 883; *Hosey v. Burgess*, 319 Ark. 183, 189, 890 S.W.2d 262, 265 (1995). However, without some degree of entrustment between persons, there is no fiduciary duty. Brill & Brill, *supra*, § 15:3.

Plaintiffs argue that a fiduciary relationship flows from both the NITS Agreement and the PSA, which designate Defendant as Prescott's agent. Defendant maintains that it never entered

---

[5] Because the Court has found that Plaintiffs' detrimental reliance claim is contract-barred, the Court does not address whether the claim is adequately pleaded.

11

into a broad fiduciary relationship with Plaintiffs. Rather, Defendant contends that any agency relationship is limited to arranging for and providing wholesale power transmission service as provided in the NITS Agreement and PSA.

The Court finds Plaintiffs' argument unpersuasive. An agency relationship can yield fiduciary duties as to "matters within the scope of the agency." *Dent v. Wright*, 322 Ark. 256, 261, 909 S.W.2d 302, 304 (1995). However, when FERC issued its decision on the reasonableness of the PSA and NITS Agreement, it found that the parties' agreements did not create an affirmative duty for Defendant to mitigate Plaintiff's pancaking and congestion costs. The Court agrees with FERC's interpretation. (ECF No. 27-1, p. 22). The contracts at issue expressly provide that Defendant is only acting as Plaintiffs' agent with regard to providing wholesale power and coordinating network integration transmission services. They do not set out a broad agency relationship or impose any duty on Defendant to manage Plaintiffs' pancaking or congestion costs. Plaintiffs do not allege Defendant failed to arrange for Prescott to receive wholesale electricity, failed to have electricity provided, or failed to implement the transmission service agreement.

Accordingly, the Court finds that Plaintiff's breach of fiduciary claim should be dismissed

### C. Negligence

The Court now addresses Plaintiffs' negligence claim.

"Negligence is defined as the failure to do something that a reasonably careful person would do, or the doing of something that a reasonably careful person would not do, under the circumstances." *New Maumelle Harbor v. Rochelle*, 338 Ark. 43, 46, 991 S.W.2d 552, 553 (1999). "A cause of action for negligence begins with the recognition of a legal duty that the defendant owed the plaintiff under the circumstances." Brill & Brill, *supra*, § 33:1. "Duty is a concept that arises out of the recognition that relations between individuals may impose upon one individual a

legal obligation to or for the other. Whether a duty arises from the relationship between two parties is a question of law. *See Yanmar Co., Ltd. v. Slater*, 2012 Ark. 36, 16, 386 S.W.3d 439, 449.

Plaintiffs argue that Defendant owed them a duty of care because Defendant agreed to serve as Prescott's agent under the PSA and NITS Agreement and that Defendant breach that duty by failing to mitigate Prescott's pancaking and congestion costs as promised. Defendant argues that any agency relationship or duty owed to Plaintiffs is limited to arranging and providing wholesale power as well as implementing Prescott's agreements for the transmission of that wholesale power.

Upon consideration, the Court agrees with Defendant. As discussed above, the contracts at issue do not create a broad agency relationship. Instead, they expressly provide that Defendant is only acting as Plaintiffs' agent with regard to providing wholesale power and coordinating network integration transmission services. Moreover, whether one owes a duty of care to another is always a question of law, and Plaintiffs have not cited to any authority, and the Court is unaware of any, imposing a duty of care on similar facts to the case at bar.

Accordingly, the Court finds that Plaintiffs' negligence claim should be dismissed.

### D. Customer Plaintiffs

The Court now turns to whether the Customer Plaintiffs should be dismissed as parties to this action.

Defendant argues that the Customer Plaintiffs should be dismissed because Plaintiffs have not made any factual allegations regarding them. Plaintiffs respond, arguing that (1) the caselaw relied upon by Defendant is inapplicable to the case at bar; (2) the Customer Plaintiffs are proper parties to this action because they are third-party beneficiaries of the agreements between Prescott and Defendant; and (3) they have stated facts sufficient to withstand Defendant's Motion to Dismiss.

Upon consideration, the Court agrees with Defendant.  The Court has reviewed Plaintiffs' complaint in its entirety and finds that it is devoid of any factual allegations concerning the Customer Plaintiffs.  Regardless of Defendant's choice of legal authority or the Customer Plaintiffs' possible third-party beneficiary status, failure to make any factual allegations relating to the Customer Plaintiffs is fatal to any claims purportedly asserted by them against Defendant. *See* Fed. R. Civ. P. 12(b)(6); *see also Brown v. Mort. Elec. Reg. Sys., Inc.*, 903 F. Supp. 2d 723, 726 (W.D. Ark. 2012), *aff'd*, 738 F.3d 926 (8th Cir. 2013) (holding that bare allegations of third-party beneficiary status were properly dismissed on Rule 12(b)(6) motion).

Accordingly, the Court finds that the Customer Plaintiffs should be dismissed as parties to this action.

### E.  Statute of Limitations

Overall, the Court has found that all of Plaintiffs' claims should be dismissed.  However, the Court will nonetheless consider Defendant's argument that Plaintiffs' claims are time-barred.  Plaintiffs argue (1) that the statute of limitations in this matter was tolled due to fraudulent concealment, and (2) that their claims are nonetheless timely.

To toll a statute of limitations based on fraudulent concealment, a party must demonstrate "(1) a positive act of fraud (2) that is actively concealed, and (3) is not discoverable by reasonable diligence."  *Summerhill v. Terminix, Inc.*, 637 F.3d 877, 880-81 (8th Cir. 2011) (quotation marks omitted).  At the pleading stage, fraudulent concealment claims must meet Federal Rule of Civil Procedure 9(b)'s particularity requirement—meaning the party asserting fraudulent concealment must plead "the who, what, when, where, and how."  *Id.* at 880-81.  In the case at bar, Plaintiffs have made no allegations regarding fraudulent concealment, much less allegations that satisfy Rule

9(b)'s particularity requirement. Therefore, the Court finds that the statute of limitations in this matter has not been tolled.

Arkansas requires that claims for detrimental reliance, breach of fiduciary duty, and negligence must be brought within three years of accrual. Ark. Code Ann. § 16-56-105. Claims accrue when the allegedly offending act occurs, "regardless of when the full extent of a plaintiff's injuries are revealed and regardless of whether there is an interval between the allegedly tortious act and the damage." *El Dorado Chem. Co. v. L&L Indus. Servs., Inc.*, No. 15-CV-1034, 2016 WL 756490, at *2 (W.D. Ark. Feb. 25, 2016); *see also Commercial Credit Grp. Inc. v. Allianz Glob. Corp. & Specialty N. Am.*, No. 1:15-CV-00093 KGB, 2018 WL 1569476, at *6 (E.D. Ark. Mar. 30, 2018) (holding promissory estoppel/detrimental reliance action accrues when plaintiff could first have maintained an action); *Ragar v. Brown*, 332 Ark. 214, 221, 964 S.W.2d 372, 375 (1998) (holding same for breach of fiduciary duty); *El Dorado Chem. Co.*, 2016 WL 756490, at *2 (holding negligence claim runs from date the negligent act is committed).

Plaintiffs argue that this action was timely commenced because Defendant's alleged misconduct continued until 2017—within two years of filing this suit. However, Plaintiffs allege that Defendant's misconduct began in 2012 and that they suffered cognizable damages beginning in January 2014. (ECF No. 2, pp. 25-26, 29-30). Consequently, Plaintiffs' claims accrued in January 2014, and the limitations period in this action would have ran at some point in January 2017, well before Plaintiffs initiated this action on April 5, 2019.

Accordingly, the Court finds that Plaintiffs' claims are time-barred.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant's Motion to Dismiss (ECF No. 12) should be and hereby is **GRANTED**. Accordingly, this case is **DISMISSED WITH PREDJUDICE**.[6]

**IT IS SO ORDERED**, this 7th day of February, 2020.

/s/ Susan O. Hickey  
Susan O. Hickey  
Chief United States District Judge

---

[6] As discussed above, the Court finds that Defendant's Request for Judicial Notice in Support of Its Motion to Dismiss the Complaint with Prejudice (ECF No. 14) should be and hereby is **DENIED**.